**Edwin A. ELLIOTT, Regional Director of the Sixteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DUBOIS CHEMICALS, INC., Respondent.**

**Civ. No. 8978.**

United States District Court
N. D. Texas,
Dallas Division.

Jan. 16, 1962.

Stuart Rothman, Dominick L. Manoli, Winthrop A. Johns, Julius G. Serot, Washington, D. C., Elmer P. Davis, Fort Worth, Tex., and James T. Youngblood, Washington, D. C., for petitioner.

Wynne, McKenzie, Stroud, Jaffe & Tinsley, and Bowyer & Thomas, Dallas, Tex., for respondent.

HUGHES, District Judge.

This proceeding was instituted on November 21, 1961, on a petition of the National Labor Relations Board under the provisions of Section 10(j) of the National Labor Relations Board Act as amended 29 U.S.C.A. § 160(j), for a temporary injunction pending the final disposition of certain matters pending before the Board and charging that Dubois Chemicals, Inc., had engaged in, and was engaging in, unfair labor practices within the meaning of Section 8(a) (1), (3), and (5) of the Act.

The charge with the Board had been filed on September 26, 1961, by Local 398, United Packinghouse, Food & Allied Workers AFL–CIO. Thereafter on October 30, 1961, the Board issued a complaint pursuant to Section 10(b) of the

1

Act alleging that Dubois had engaged in, and was engaging in, unfair labor practices as charged.

The petition in this cause was filed after the issuance of the complaint and was predicated on petitioner's conclusion that there was reasonable cause to believe that respondent had engaged in the practice alleged.

The evidence showed that respondent has a plant in Dallas, Texas and is engaged in the maufacture, sale and distribution of cleaning chemicals and related products.

On September 21, 1961, at a meeting attended by 13 of the 19 production and maintenance workers employed by respondent at its Dallas plant, these 13 employees designated the Union as their collective bargaining representative and at the time agreed to wear union buttons to work the next day.

The following day an additional 4 production and maintenance employee designated the union as their collective bargaining representative. At 8:45 A.M. the same day, Dubois foreman called the workers together and demanded to know the names of those who had joined the union. Upon being told he said, "I want you to know that the Union's not in here yet".

Thereafter at 9:45 A.M. the plant superintendent called the production and maintenance men together and advised them that 7 named employees were being discharged at 11 A.M. that day. In protest of this action, all except one of the remaining employees walked out.

On September 25th, the Union requested Dubois to meet and discuss the situation, which request was refused. On the same day, the Union began picketing and thereafter all of the striking employees not previously terminated were discharged. Since September 25, 1961, respondent has on several occasions suggested to the picketing employees that they meet with respondent as a group, but without any union representative being present.

Respondent's contention was that the release of the first 7 employees was for economic reasons, there being insufficient work.

The Court under this Act is not required to make final or even preliminary findings as to the truth or falsity of the facts alleged in the petition of the Board. Its function is limited to ascertaining whether the Director would have reasonable cause to believe that the charges filed were true and to granting such equitable relief "as it deems just and proper". Jurisdiction is limited to a preservation of the status quo pending the time that the Board can hear and determine the merits as to whether or not the alleged practices do or do not constitute unfair labor practices.

Sections 8(a) (1) and (3) provide that "It shall be an unfair labor practice for an employer (1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 7" (that is the right to organize) and "(3) by discrimination in regard to hire or tenure of employment * * * to encourage or discourage membership in any labor organization:."

The purpose of Congress in enacting Section 10(j) is stated in the Senate Report "the relatively slow procedure of the Board hearing and order, followed many months later by an enforcing decree of the Circuit Court of Appeals, falls short of achieving the desired objective. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices".

In the case of Brown v. Pacific Telephone & Telegraph Company 9 Cir. 218 F.2d 542, in reversing the judgment of the District Court, which denied an injunction under Section 10, the Circuit Court held that in view of the irreparable harm which might be suffered by delay, the law entitled the Board to injunctive relief. In a concurring opinion Judge Pope said, "since this injunction is sought for the protection of the public interest and in aid of a policy which Congress itself has made plain, the area for

the exercise of the traditional discretion not to grant an injunction is much more limited." As stated with respect to a somewhat comparable situation in Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754, "For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases".

The evidence in this case establishes that the Director had reasonable cause to believe that respondent had engaged in, and was engaging in, acts and conduct in violation of Section 8(a) (1) and (3) of said Act, affecting commerce within the meaning of Section 2(6) and (7) of said Act. There was evidence of acts on the part of respondent which (1) interfered with employees in the exercise of their right to organize in labor unions and (2) discriminated against employees in tenure of employment to discourage membership in a labor union. With reference to the discharge of certain employees, while the evidence establishes that the number of men employed varied from time to time, and for some weeks the Production Manager had urged a reduction in the number of men employed at the Dallas plant, on the occasion involved herein the evidence is sufficient for the Director to have reasonable cause to believe that the discharge of employees on September 22, 1961 was not for economic reasons but to discourage membership in a labor organization.

In the pending case delay might well defeat the purpose of the Act. Discharged employees may move away or obtain other jobs resulting in dissipation of union strength.

In order to carry out the intention of Congress, the status quo must be maintained. Ordering respondent to reinstate the employees and enjoining it from discriminating against them for the purpose of discouraging membership in a union and from interfering with their right to organize simply preserves the status quo and to that extent the application for injunction must be sustained.